COPY

1  Patricia D. Peterman
   PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC
2  2817 2nd Avenue North, Suite 300
   Billings MT 59101
3  Phone: 406-252-8500
   Fax: 406-294-9500
4  ATTORNEY FOR PLAINTIFF

CLERK OF THE
DISTRICT COURT
CAROL MUESSIG

2011 APR 12 PM 3 28

FILED

BY: _____
        DEPUTY

5

6

7

8
   MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY
9

10  BRANDON ROBERTS,                           Cause No.   D V - 1 1 - 0 5 7 5

11                          Plaintiff,          Judge:      RUSSELL C. FAGG

12  -vs-                                        **COMPLAINT FOR DECLARATORY
                                                JUDGMENT, PRELIMINARY
13  NORTHWEST Ortho Plus, INC.                  INJUNCTION AND DEMAND FOR JURY
                                                TRIAL**
14                          Defendant.

15
        For his Complaint against Defendant NWOPI, ("NWOPI") Plaintiff Brandon Roberts
16
    ("Roberts") states and alleges:
17
        1.      Plaintiff Roberts seeks a declaratory judgment pursuant to the Montana Uniform
18
    Declaratory Judgments Act, §§27-8-101 et seq., MCA, declaring void and unenforceable under
19
    Montana law provisions of a Sales Representative Agreement prepared by Defendant NWOPI, an
20
    entity which is not Plaintiff's current employer. Defendant NWOPI purports to: (1) prohibit Plaintiff
21
    Roberts from engaging in his occupation; (2) dictate that Washington law will govern Plaintiff's
22
    employment in Montana; and (3) dictate that legal proceedings arising from Plaintiff's employment
23
    in Montana will be venued in Washington.
24
                                **GENERAL ALLEGATIONS**
25
        2.      Roberts resides in Billings, Yellowstone County, Montana.
26
        3.      Defendant NWOPI is a Washington corporation with its home office in Spokane,
27
    Washington.
28

1    4.    On June 25, 2009, NWOPI required Roberts to sign a Sales Representative

2  Agreement ("Agreement") with several provisions, including a Non-Compete, a copy of which was

3  to be attached as Exhibit A to the Agreement. The Sales Representative Agreement is attached

4  hereto as Exhibit 1 and incorporated herein. There was no Exhibit A to the Agreement, nor did

5  Roberts sign an Exhibit A to the Agreement to the best of his knowledge. NWOPI gave no

6  additional consideration for the Non-Compete provision except that Roberts became employed by

7  NWOPI. The Agreement states, in relevant part as follows:

8         ¶ 16. Non-Compete. Sales Representative has executed a Sales Representatives and Sales
          Staff Non-Compete and Non-Solicitation Agreement which is made a part hereof and
9         incorporated herein by reference as Exhibit A. Accordingly, and in addition to the terms set
          forth in Exhibit A, Sales Representative agrees that, during the term of this Agreement,
10        he/she shall  serve the customers of S&N and/or NWOPI in a representative capacity only,
          and shall not act on behalf of any competitor of S&N and/or NWOPI engaged in the
11        manufacture, distribution or sale of NWOPIpaedic medical devices, and that on termination,
          expiration, or non-renewal of this Agreement for any cause or reason whatsoever, or without
12        cause, Sales Representative shall not, for a period of twelve (12) months thereafter:

13              a.      Call upon, solicit, initiate or make any efforts to divert in any way customers
                        served by a Sales Representative on behalf of S&N and/or NWOPI in the
14                      Restricted Area (as defined herein); or
                b.      Provide services to, be employed by, contract with, or associate with any
15                      other person or company for purposes of the sale or solicitation of sales in the
                        Restricted area of NWOPIpaedic medical devices of the type described in
16                      Appendix 1; or
                c.      Induce or influence, or attempt to induce or influence, any person or company
17                      engaged as an employee, agent or independent contractor of S&N and/or
                        NWOPI to terminate his/her/its relationship with S&N and/or NWOPI
18                      (including any division of S&N).

19        Sales Representative agrees that the limitations imposed in this paragraph 16 are reasonable
          and no broader than necessary to protect the legitimate business interests of S&N and/or
20        NWOPI and to preserve the integrity of proprietary and other confidential information
          disclosed to Sales Representative pursuant to this Agreement. For purposes of this
21        Agreement, the "Restricted Area" shall include all counties in which Sales Representative
          called on, solicited and/or serviced customers, former customers and/or prospective
22        customers at any time during the twelve (12) months immediately preceding the termination,
          expiration or non-renewal of this Agreement, including but not limited to all counties in
23        which the customers listed in Appendix 2 are located.

24  See Agreement attached hereto as Exhibit 1.

25        5.    In February 2011, Brandon Roberts contract with NWOPI ended.

26        6.    On March 4, 2011, NWOPI sent a letter to Brandon Roberts terminating the Sales

27

28                                    2

1  Representative Agreement.

2      7.    The letter from NWOPI to Roberts has raised questions concerning the construction,

3  interpretation, and validity of the Agreement.

4      8.    NWOPI failed to pay Roberts commissions owed.

5  <u>COUNT 1</u>

6  <strong><u>CLAIM FOR DECLARATORY RELIEF</u></strong>

7      9.    The Agreement is unenforceable and void for the following reasons:

8          1.    It is not supported by independent consideration.

9          2.    The Non-Competition provision is an unreasonable restraint on trade

10             and is void pursuant to § 28-2-703, MCA.

11         3.    The Non-Competition provision violates state and federal anti-trust

12             laws.

13         4.    The Agreement is a contract of adhesion that is unconscionable and

14             unenforceable.

15         5.    The choice of law and venue provisions are void as against Montana

16             public policy.

17     10.    Plaintiff Roberts is entitled to a judgment declaring the Agreement void and

18 unenforceable, and to recover his costs and attorney fees pursuant to the terms of the Declaratory

19 Judgments Act and the Agreement.

20 <u>COUNT 2</u>

21 <strong><u>PRELIMINARY INJUNCTION</u></strong>

22     11.    Defendant NWOPI's intended actions will cause irreparable injury to Plaintiff

23 because Defendant will interfere with Plaintiff's right to pursue his career.

24     12.    Because Montana law provides that non-compete clauses are void as against public

25 policy, there is a high probability of Plaintiff's ultimate success on the merits.

26     13.    Plaintiff is therefore entitled to a preliminary injunction enjoining and prohibiting

27

28 3

1  Defendant from preventing Plaintiff from pursuing his career.

2                                          **COUNT 3**

3                          **CLAIM FOR SUPPLEMENTAL RELIEF**

4      14.    Plaintiff is entitled to recover damages, which may be trebled, for injuries caused by

5  Defendant's conduct in violation of state or federal anti-trust laws.

6                                          **COUNT 4**

7  **VIOLATION OF THE FAIR LABOR STANDARDS ACT AND WAGE AND HOUR**

8      15.    At all relevant times, Defendant was an employer within the meaning of the Fair

9  Labor Standards Act of 1938, as amended, 29 U.S.C. 201, *et seq.* and is subject to the provisions of

10  such Act.

11     16.    Roberts was at all relevant times an employee of Defendant, as defined by the Fair

12  Labor Standards Act of 1938, as amended, 29 U.S.C. 201, *et seq.*

13     17.    During the period of time that Roberts was employed by Defendant, he earned

14  commissions some of which have not been paid to Plaintiff in violation of the provisions of the Fair

15  Labor Standards Act of 1938, as amended, 29 U.S.C. 201, *et seq.*

16     18.    Pursuant to 29 U.S.C. §§ 201, et seq. Defendant owes Plaintiff his earned

17  commissions plus an additional equal amount as liquidated damages, together with an additional sum

18  for attorneys' fees and costs.

19     19.    At all relevant times, Roberts was an employer within the meaning of the Montana

20  Wage and Hour Act as defined in Mont. Code Ann. § 39-3-201(5).

21     20.    Roberts was, at all relevant times, an employee of Defendant, as defined in the

22  Montana Wage and Hour Act.  Mont. Code Ann. § 39-3-201(4).

23     21.    During the period of time that Roberts was employed by Defendant, he performed

24  work for which he was not compensated and earned commission that were not paid in violation of

25  the provisions of the Montana Wage and Hour Act.

26     22.    Defendant's failure to pay Roberts all commissions due violates provisions of the

27

28                                             4

1  Montana Wage and Hour Act.

2      23.    Pursuant to Mont. Code Ann. § 39-3-206 and § 39-3-204, Defendant owes Roberts

3  for his earned commissions plus an additional amount not to exceed 110% for penalty damages,

4  together with an additional sum for attorneys' fees and costs.

5                              **PRAYER FOR RELIEF**

6  Plaintiff prays for judgment against Defendant:

7      1.    Declaring the Agreement unenforceable against Plaintiff;

8      2.    Declaring the venue and choice of law provisions void and unenforceable;

9      3.    Declaring the Non-Competition provision at ¶16 of the Agreement void and

10          unenforceable under Montana law;

11      4.    Awarding damages, and trebling them, for Defendant's violations of anti-trust laws;

12      5.    Awarding attorney fees and costs; and

13      6.    Granting further just relief.

14  Plaintiff additional prays for relief from the Fair Labor Standards Act and Wage and Hour

15  against Defendant:

16      7.    That the Court declare the rights and duties of the parties consistent with the relief

17          sought by Plaintiffs;

18      8.    Issue a declaratory judgment that Defendant's acts, policies, practices and procedures

19          complained of herein violated provision of the Fair Labor Standards Act and

20          Montana Wage and Hour Act;

21      9.    That Defendant be enjoined from further violations of the Fair Labor Standards Act

22          and Montana Wage and Hour Act;

23

24      10.    That the named Plaintiff recover compensatory damages and an equal amount of

25          liquidated damages as provided under the law and in 29 U.S.C. § 216(b) or in the

26          alternative recover compensatory damages and an additional amount not to exceed

27          110% for penalty damages as provided under Mont. Code Ann. § 39-3-206 ;

28                              5

11.   That Plaintiff recover an award of reasonable attorneys fees, costs, and expenses;

12.   Order the Defendant to make whole the Plaintiff by providing appropriate earned and
unpaid commissions and other benefits wrongly denied in an amount to be shown at
trial and other affirmative relief;

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial by jury on all issues so triable.

DATED this 12th day of April, 2011.

PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC

By _____
Patricia D. Peterman
Attorney for Plaintiff

## VERIFICATION

STATE OF MONTANA           )
                           :ss.
COUNTY OF YELLOWSTONE      )

Brandon Roberts, being first duly sworn upon his oath, deposes and says:

That he has read the foregoing Petition for Temporary Restraining Order, and that the
facts and matter contained therein are true, accurate and complete to the best of his knowledge
and belief.

**Brandon Roberts**

SUBSCRIBED AND SWORN to before me, a Notary Public for the State of
Montana, this 12th day of April, 2011.

Printed Name _____
Notary Public for the State of Montana.
(Notarial)        Residing at Billings Montana.
                  My Commission Expires: _____

6

## SALES REPRESENTATIVE AGREEMENT

THIS AGREEMENT is effective **August 1, 2009** ("the Effective Date"), and is by and among **Northwest Ortho Plus, Inc. ("NWOPI")** and **Brandon Roberts/Sales Representative ("SR")**. NWOPI is a contractually bound Sales Agent for Smith-Nephew, ("S&N"). S&N manufactures, distributes and/or supplies orthopedic medical devices, including instruments, implants and supplies, to hospitals, clinics, surgeons and others in the medical trade. Sales Representative recognizes that he/she will be trained to perform work of a highly specialized nature involving sales of orthopedic products to NWOPI's valuable customer base. SR recognizes that during the course of his/her relationship with NWOPI under this Agreement, SR will have the opportunity of receiving training which will substantially improve his/her prospects and the individual skills. SR further recognize that he/she will be given access to Confidential Information of S&N and NWOPI, and that NWOPI's willingness to enter into this Agreement with SR is conditioned upon the agreement of SR to honor all of the terms, conditions, restrictions and prohibitions set forth herein. In consideration of the covenants herein contained, the parties hereto agree as follows:

NOTHING HEREIN MAY BE CONSTRUED AS A CONTRACT OF EMPLOYMENT BY AND BETWEEN NORTHWEST ORTHO PLUS, INC. AND SALES REPRESENTATIVE. SALES REPRESENTATIVE IS AN INDEPENDENT CONTRACTOR.

1. Appointment of Sales Representative. NWOPI hereby engages and Sales Representative desires to be engaged as an independent representative of NWOPI for the solicitation of sales of Products (as herein defined) for the territory designated herein. Sales Representative will not sell or solicit sales of orthopedic products or otherwise represent companies selling or otherwise distributing orthopaedic products competitive to S&N's and/or NWOPI's orthopaedic products without prior written approval from NWOPI. Subject to the terms of this Agreement, Sales Representative is free to engage in any other activities he/she wishes.

2. Territory and Products. The term "Products" as used in this Agreement refers to the orthopaedic product lines identified in Appendix 1 hereto (hereinafter "Products"). S&N by and through NWOPI may add and/or delete items from such Appendix to reflect changes to the lines of Products offered for sale generally by S&N. S&N, by and through NWOPI may add items to such Appendix at its sole discretion.

The territory within which the Sales Representative shall solicit sales of Products shall be the geographical area and/or account listing shown in Appendix 2 hereto (hereinafter "Territory"); provided, however, that NWOPI reserves the right to reasonably revise the Territory as necessary and/or as revised by S&N, subject to giving reasonable advance notice to Sales Representative.

3. Sales Representative's Duties and Obligations.



a.  SR shall exert his/her best efforts to promote Products and solicit orders for sales of Products within the Territory.

b.  SR shall ensure the filing of all appropriate business registrations, and compliance with the requirements of tax withholding and reporting.

c.  In order to comply with applicable law and to protect S&N and NWOPI from claims and liabilities, SR's communications and representations to customers shall be true, accurate, complete and consistent with the labeling of Products. SR shall in no circumstances modify, repackage, adulterate, misbrand, alter or add labels to or remove labels from any Products. Sales Representative shall take no action or issue any statement which is or could be detrimental to the reputation and goodwill of S&N and/or NWOPI.

d.  All advertising and all participation by Sales Representative in public exhibitions, relating to Products and the use of S&N's and/or NWOPI's name and trademarks, shall be subject to prior written consent of S&N and NWOPI, which consent shall not be unreasonably withheld.

e.  Except as otherwise agreed, Sales Representative shall be responsible for providing his/her own equipment, offices, working facilities, and such other facilities and services as may be required at his/her own expense; provided, however, that SR shall maintain an inventory of demonstration equipment, deliverable Products and instrument kits (hereinafter "Inventory") to promote and solicit orders for Products. SR shall be responsible for the risk of loss or damage of such Inventory owned by S&N and/or NWOPI whether or not held at SR's business location. Upon termination of this Agreement, Inventory shall be returned to NWOPI. SR shall pay his/her own expenses, including but not limited to courier fees, postage and freight.

f.  SR shall indemnify and hold harmless S&N and NWOPI and their affiliates and their respective agents and employees from and against all claims, damages, losses, and expenses, including legal expenses and attorneys' fees, arising out of any breach of this Agreement, any negligence, or any other misconduct, on the part of SR's or his/her agents or employees.

4. NWOPI's Duties and Obligations.

a.  NWOPI shall sell Products on orders solicited by SR in accordance with published price lists. Written notice of changes to the price lists shall be given to SR by NWOPI at least thirty (30) days in advance of the implementation of such changes or as soon thereafter as practical after receiving notice of the price change(s) from S&N. NWOPI may accept or refuse any order for Products and will not be bound by any order until it is finally accepted by NWOPI. NWOPI shall not be liable for any loss or damage caused by non-acceptance of orders or delays in making shipments.

b.  NWOPI shall pay to Sales Representative a <u>conditional</u> one-time bonus ($8500.00) as well as commission(s) at the percentages/rates as agreed upon and as set forth herein on <u>Appendix 3</u> on orders solicited within and delivered to the Territory, beginning on the Effective Date.  Commissions shall be deemed earned by Sales Representative upon invoicing of Product sales by S&N and/or NWOPI to customers.  Commissions earned by SR shall be computed on the net amount of the invoices rendered (less credit memos) in accordance with published price lists for each order or part of an order, exclusive of all freight and transportation costs (including insurance), normal and recurring bona fide trade discounts having S&N's and/or NWOPI's prior approval and any applicable sales or similar taxes. S&N and/or NWOPI shall charge the SR back for the commissions previously paid provided that S&N and NWOPI shall make a good faith effort to collect monies owed on invoices from orders solicited by SR. In the event that SR continues to deliver order Product to an account on credit hold, S&N and/or NWOPI will reserve the right to charge back against SR's commission the entire amount of the unpaid invoice.

c.  NWOPI and S&N shall indemnify SR against any and all third party claims and demands for losses, damages and injuries, including legal expenses and attorneys' fees, arising out of any claim of a defect in the manufacture or design of a Product or written representation or omission in S&N's promotional literature concerning the Product. This indemnity shall not extend to any malfeasance or nonfeasance of SR, or SR's agents or employees.   Except as otherwise expressly provided, Sales Representative is liable for all of his/her own expenses and all claims made against SR.

5. <u>Confidentiality, Improvements, Patents, and Trademarks.</u>

a.  SR acknowledges that he/she will be exposed to and learn of proprietary and other Confidential Information (as defined) and agrees to take all reasonable steps to ensure that such Confidential Information is not disclosed, published or made use of outside the business of SR, NWOPI and S&N; provided, however, that the foregoing shall not apply to information (a) which be can shown to be in writing and known to SR prior to disclosure by NWOPI and/or S&N; (b) which is or becomes public knowledge through no fault of SR; or (c) which is disclosed to SR by a third party (including NWOPI) with the lawful right to make such disclosure.   For purposes of this Agreement, "Confidential Information" means any information disclosed to Sales Representative or known to Sales Representative by reason of, or as a consequence of, his/her relationship with NWOPI (including information conceived, developed, discovered or otherwise originated by Sales Representative) which is not generally known in the industry, about S&N's and/or NWOPI's business, processes, operations, products, product composition, competitive product information and analysis, marketing strategies, marketing programs, marketing data, research and development programs, manufacturing processes, customers, consultants, pricing practices, pricing formulae, discounts, purchasing patterns or preferences of S&N's and/or NWOPI's customers, custom products, testing, or suppliers.  Confidential Information also means any formula, pattern, or compilation of information which gives S&N and/or NWOPI, or any division of S&N and/or NWOPI, whether or not such division is represented by

Sales Representative, the potential of gaining an advantage over any of its competitors who may not have access to such information.

b.   Sales Representative shall submit to NWOPI all ideas concerning Products which SR receives from customers during the term of this Agreement. Further, because S&N and/or NWOPI has/have provided SR with special knowledge and has placed SR in a position to formulate ideas concerning Products, all product ideas developed or discovered by SR are and shall remain the sole property of NWOPI and/or S&N. Sales Representative prospectively assigns such ideas to NWOPI and/or S&N and hereafter shall acquire no right or interest in such ideas. Within a reasonable time, not to exceed one (1) year, NWOPI and/or S&N shall evaluate the idea and shall reassign rights to the idea to SR, at SR's request, if NWOPI and/or S&N elects not to develop the idea commercially.

c.   Sales Representative acknowledges that any and all of the trade secrets, ideas and Confidential Information (as defined herein), research, methods, improvements, customer lists, sales information, training materials, patented or copyrighted material relating to present or future Products or NWOPI's and/or S&N's business, and the goodwill associated with them, are owned by S&N and/or NWOPI, are provided or revealed to SR in trust and confidence solely for the benefit of S&N and/or NWOPI, and are and shall remain the sole and exclusive property of S&N and/or NWOPI. All such information and knowledge about S&N and/or NWOPI and the products, services, customer lists, sales information, training materials, standards, specifications, procedures and techniques which are not in the public domain or generally known in the industry and such other information and material as S&N, through NWOPI may designate as confidential shall be deemed confidential for the purposes of this Agreement. Sales Representative shall not, during and after the termination of this Agreement, copy or disclose to any other person, or use for any purpose other than as contemplated by this Agreement, any of the Confidential Information or trade secrets, and all such Confidential Information and trade secrets shall be returned to NWOPI and/or S&N by SR immediately upon termination of this Agreement, or at any other time upon request by NWOPI.

d.   The above provisions of this Section 5 shall survive the termination of this Agreement.

e.   NWOPI, with the consent of S&N, hereby grants Sales Representative a royalty-free right to use S&N's and/or NWOPI's trademarks and identification on and in connection with the solicitation of orders for Products during the term of this Agreement. SR shall discontinue the use of all such trademarks upon the termination of this Agreement. All goodwill generated hereunder in the use of such trademarks shall accrue to the benefit of S&N and/or NWOPI and Sales Representative hereby disclaims any rights in S&N's trademarks and identification other than the aforementioned license.

f.   Sales Representative agrees to comply with all rules and policies that may be

established in the future by S&N through NWOPI with regard to the protection and preservation of Confidential Information.

6. Term of Agreement. Not withstanding Paragraph 7 below, this Agreement shall commence on the Effective Date and continue in full force and effect for a period not to exceed five (5) years OR until S&N terminates its Sales Representative Agreement with NWOPI, whichever occurs first. Thereafter, this Agreement shall automatically renew for successive additional terms of twelve (12) months each, if S&N fails to notify NWOPI and NWOPI fails to notify Sales Representative of its intention not to renew this Agreement by December 1 prior to the expiration of the then-current term hereof.

7. Termination.

    a.    The following actions by or events involving Sales Representative shall each constitute a material breach of this Agreement and give NWOPI an immediate right to terminate this Agreement or, in the instance of (viii) below, to hold or stay the Commission terms herein in abeyance until resolved:

        (i)    Conviction of Sales Representative of a felony; or

        (ii)    Involuntary bankruptcy which is not terminated within sixty (60) days, insolvency or voluntary bankruptcy; or

        (iii)    Sales activities in violation of applicable law, misrepresentation, misbranding or adulteration of any of S&N's products, misrepresentation, violation of any S&N policy (including but not limited to Appendix 4 hereto) or any action or statement which is or could be detrimental to the reputation and good will of S&N and/or NWOPI; or

        (iv)    Selling or invoicing S&N products requesting or requiring customer payment to Sales Representative; or

        (v)    Selling S&N products to parties who use, resell or distribute such products outside the United States; or

        (vi)    Failure to retrieve Product as called for during product retrievals;

        (vii)    Engaging in the sale of products or the solicitation of orders for products, competitive to those of S&N; or

        (viii) Sales Representative being named as a defendant in any legal action brought by a former employer and/or an orthopaedic device manufacturer alleging a breach of contract, specifically violation of Restrictive Covenant(s) by Sales Representative.

b.    Any time subsequent to the first ninety (90) days of the term of this Agreement, either
      Sales Representative or S&N and/or NWOPI may terminate this Agreement, with or
      without cause, by giving the other party written notice of its desire to terminate.

8. Force Majeure. A party's obligations to perform under this Agreement shall be excused during
   such period of delay caused by matters such as strikes, shortages of power or raw materials,
   government orders, or Acts of God, which are reasonably beyond the control of the party
   obligated to perform.

9. Notices. Any notice required by this Agreement shall be deemed sufficient if sent by a) hand
   delivery, b) certified mail, postage prepaid, c) by Federal Express or other similar nationally
   recognized overnight delivery service providing proof of delivery, to the party to be notified at
   the address set forth below, until a different address is supplied in writing.

   a.    In the case of NWOPI, such notice shall be sent to:

         Northwest Ortho Plus, Inc.
         Attn: Tom Corbett
         109 South Scott, Suite C-1
         Spokane, WA. 99202

   b.    In the case of Sales Representative, such notice shall be sent to the address provided
         to NWOPI by Sales Representative.

10. Entire Agreement. This document and the incorporated references represent the entire
    agreement among the parties hereto, and supersede all prior agreements regardless of their
    terms or cancellation provisions, and this Agreement shall be modified only by a written
    agreement signed by NWOPI and the Sales Representative.

11. Applicable Law and Venue. This Agreement shall be governed by the laws of the State of
    Washington as applicable to contracts made and to be performed in that state. Exclusive
    jurisdiction and venue for any claims or matters related to or arising from this Agreement shall be
    in the state and/or federal courts located in Spokane County, Washington, and Sales
    Representative consents to the jurisdiction of such courts.

12. Waiver of Right to Trial by Jury. Sales Representative agrees that any legal or equitable action
    relating to this Agreement and/or relating to Sales Representatives obligations or NWOPI's under
    this Agreement shall be tried to the court and Sales Representative and NWOPI each waives
    his/her/its respective rights to a trial by jury.

13. Injunctive Relief. Sales Representative understands and agrees that any breach or violation of
    this Agreement by him/her may cause S&N and/or NWOPI irreparable harm which cannot be
    adequately compensated by an award of money damages. Therefore, Sales Representative

agrees that, in addition to the other remedies available to S&N and/or NWOPI, S&N and/or NWOPI may, without the necessity of posting a bond or other financial assurance, seek and obtain injunctive relief restraining Sales Representative from violating the terms of this Agreement, either directly or indirectly, or from otherwise engaging in conduct that compromises the protection afforded S&N and/or NWOPI by this Agreement.

14. Assignability. This Agreement shall not be assigned by Sales Representative or S&N and/or NWOPI or by operation of law without the prior written consent of the other party; however, in the case of NWOPI, NWOPI may, without obtaining the consent of the Sales Representative, assign its rights and obligations under this Agreement to any corporation with which S&N and/or NWOPI may merge or consolidate or to which S&N and/or NWOPI may transfer substantially all of its assets. Sales Representative may not assign any rights under this Agreement without the prior written consent of S&N and/or NWOPI.

15. Severability. Sales Representative agrees that the restrictions imposed in this Agreement are reasonable and fair and necessary for the protection of S&N's and/or NWOPI's legitimate business interests. If a court of competent jurisdiction finds any provision of this Agreement invalid or unenforceable, such provision shall not affect the remainder of the Agreement which shall otherwise remain in full force and effect.

16. Non-Compete. Sales Representative has executed a Sales Representatives and Sales Staff Non-Compete and Non-Solicitation Agreement which is made a part hereof and incorporated herein by reference as Exhibit A. Accordingly, and in addition to the terms set forth in Exhibit A, Sales Representative agrees that, during the term of this Agreement, he/she shall serve the customers of S&N and/or NWOPI in a representative capacity only, and shall not act on behalf of any competitor of S&N and/or NWOPI engaged in the manufacture, distribution or sale of orthopaedic medical devices, and that on termination, expiration, or non-renewal of this Agreement for any cause or reason whatsoever, or without cause, Sales Representative shall not, for a period of twelve (12) months thereafter:

a. Call upon, solicit, initiate or make any efforts to divert in any way customers served by Sales Representative on behalf of S&N and/or NWOPI in the Restricted Area (as defined herein); or

b. Provide services to, be employed by, contract with, or associate with any other person or company for purposes of the sale or solicitation of sales in the Restricted Area of orthopaedic medical devices of the type described in Appendix 1; or

c. Induce or influence, or attempt to induce or influence, any person or company engaged as an employee, agent or independent contractor of S&N and/or NWOPI to terminate his/her/its relationship with S&N and/or NWOPI (including any division of S&N).

Sales Representative agrees that the limitations imposed in this paragraph 16 are reasonable and no broader than necessary to protect the legitimate business interests of S&N and/or NWOPI and to preserve the integrity of proprietary and other confidential information disclosed to Sales Representative pursuant to this Agreement. For purposes of this Agreement, the "Restricted

Area" shall include all counties in which Sales Representative called on, solicited and/or serviced customers, former customers and/or prospective customers at any time during the twelve (12) months immediately preceding the termination, expiration or non-renewal of this Agreement, including but not limited to all counties in which the customers listed in Appendix 2 are located.

17.  Compliance.

    a.  Sales Representative shall (i) comply with all applicable fraud and abuse laws and with the policies of Smith & Nephew, Inc., including but not limited to Appendix 4 hereto, as it may be amended from time to time; (ii) indemnify S&N and/or NWOPI for any damages S&N and/or NWOPI suffers due to Sales Representative's violation of the policies of S&N and/or NWOPI; and (iii) cooperate in S&N's and/or NWOPI's investigations relating to sales representative activities, including investigations relating to fraud and abuse issues.

    b.  Sales Representative shall also comply with the policy of Smith & Nephew, Inc. attached as Appendix 5, as it may be amended from time to time.

18.  Relationship.    This Agreement shall not be construed to create between Sales Representative and/or between SR and NWOPI, and/or between SR and S&N, the relationship of principal and agent, joint venturers, partners, employer and employee, franchisor and franchisee, manufacturer and distributor, or any other similar relationship, the existence of which is hereby expressly denied by each party. This Agreement does not establish a franchise of any type. The parties hereto agree that the Agreement shall not be subject to and expressly waive application of any franchise laws that may exist in any jurisdiction. Sales Representative shall NOT have any authority to bind S&N and/or NWOPI, and neither S&N nor NWOPI shall be liable to any third party in any way for any engagement, obligation, contract, representation or transaction of Sales Representative.    Sales Representative is an independent contractor engaged in its own and entirely separate business.

19.  Non-Disclosure.    Sales Representative shall not disclose to any third party the terms of this Agreement, except (a) with the express prior written consent of S&N and/or NWOPI, or (b) as may be required by court order of a court of competent jurisdiction, in which event the contents of any proposed disclosure shall be discussed with NWOPI and S&N before release.

20.  Representations and Warranty of Sales Representative. Sales Representative expressly warrants and represents that he/she is not presently a party, subject to or prohibited from entering into this Agreement by any contract or agreement with any person, firm or corporation which may prevent, restrict or hinder the performance of his/her duties or obligations under this Agreement. Sales Representative agrees not to make any agreement with or commitment to any person, firm or corporation that would prevent, restrict or hinder the performance of his/her duties or obligations under this Agreement.

IF AT ANY TIME, LEGAL PROCEEDINGS ARE INTITIATED AGAINST SALES REPRESENTATIVE OR NWOPI OR S&N, OR ANY OF THE AFOREMENTIONED, ALLEGING ANY BREACH OR VIOLATION/INTERFERENCE

OF/WITH A RESTICTIVE COVENANT, SALES REPRESENTATIVE SHALL DEFEND, INDEMNIFY AND HOLD HARMLESS NWOPI AND S&N IN THE ACTION.

21.   Training.   S&N and/or NWOPI may require Sales Representative to satisfactorily complete certain training programs or courses as determined by S&N and/or NWOPI. S&N and/or NWOPI may furnish training programs or courses in its sole discretion and at times and places selected solely by S&N and/or NWOPI.  Training programs and courses will require a substantial time commitment from Sales Representative (10-15 days). Such courses may be conducted at S&N's and/or NWOPI's corporate headquarters in Memphis, TN. or Spokane, WA. respectively and/or at such other or additional places as may be designated by S&N and/or NWOPI. [Formatted: Bullets and Numbering]

Sales Representative shall, as a condition subsequent to this Agreement, complete the training programs and courses determined to be necessary in accordance with S&N's and/or NWOPI's sole subjective discretion, exercised in good faith, it being agreed that such discretion is one which only S&N is capable of making because of its unique experience and knowledge of its products, markets, sales force and business methods. In the event Sales Representative does not complete said training programs and courses to S&N's satisfaction, NWOPI shall have the right to rescind this Agreement.  If Sales Representative requests additional training, no fee shall be charged Sales Representative but the availability of such training at any time shall be limited to S&N's and/or NWOPI's space availability at a regularly scheduled training program or course.

At the option of S&N and/ or NWOPI, Sales Representative shall automatically be registered for the basic product training program upon signing this Agreement.  The training program will cover topics that S&N deems appropriate.  In addition to initial training, S&N and/or NWOPI may conduct additional Sales Representative training.  Sales Representative shall attend such training courses as may be reasonably required by S&N and/or NWOPI. There shall be no additional charge for Sales Representative to attend any such training course.  Sales Representative shall be responsible for all his/her own costs and expenses, including but not limited to travel and living expenses, in connection with attendance at or participation in such a course.

22.  Remedies.  Sales Representative understands that breach of this Agreement may cause S&N and/or NWOPI irreparable harm which cannot be adequately compensated by an award of money damages.  As a result, Sales Representative agrees that, in addition to any other remedy S&N and/or NWOPI may have, S&N and/or NWOPI may seek and obtain injunctive relief restraining Sales Representative from directly or indirectly violating this Agreement or from engaging in any activity that compromises the protection afforded to S&N and/or NWOPI by this Agreement without the necessity of posting a bond or other financial assurance.

23.  Costs.  In any suit or other proceeding for any purpose with respect to this Agreement, in which S&N and/or NWOPI is the prevailing party, Sales Representative shall be liable to pay all costs (including attorneys' fees) incurred by S&N and/or NWOPI with respect to such suit or other proceeding.

24.  Sales Representative's Termination Notice.  Sales Representative agrees to inform NWOPI in writing, upon giving notice of termination of this Agreement, of the identity and address of Sales Representative's new employer (or the new principal for Sales Representative) and job title and

responsibilities, and they will continue to so inform NWOPI in writing with respect to any changes in Sales Representative's employment (or other engagement of SR) during the 12 months following termination of this Agreement for any reason. Further, Sales Representative shall provide any such new employer (or principal) with a copy of this Agreement, but shall not provide a copy of Appendix 3, Commission Schedule.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the 1st day of June, 2009.

NORTHWEST ORTHO PLUS, INC.                    SALES REPRESENTATIVE

_____                        _____  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
Thomas A. Corbett                              Brandon Roberts -- Soc. Sec. #

Date: 6-25-09                                  Date: 6-18-09

Appendices:
    1.      Products
    2.      Territory
    3.      Commission Schedule
    4.      Fraud and Abuse (AdvaMed Code of Ethics)
    5.      Surgery Role

## APPENDIX 2

### TERRITORY

The territory* is defined by the account list shown below:

The territory is limited to the following cities and for all accounts of S&N and/or NWOPI in these cities.

1. MONTANA – Sales Representative territory shall be limited to the following cities in the state of Montana:

   Bozeman, Butte, Billings, Helena and Great Falls and areas immediately surrounding these cities.

**APPENDIX 3**

**COMMISSION SCHEDULE**

Sales Representative, so long as this Agreement is in effect, will be paid a monthly commission rate of:

I. YEAR ONE:

1. Sales Representative shall receive $8500.00 upon execution of this Agreement. If at any time within twelve (12) months after the execution of this Agreement SR ceases to be a Sales Representative of NWOPI, SR shall immediately repay the $8500.00 to NWOPI.
2. Sales Representative shall be guaranteed a monthly commission rate of $8500.00 for year one (1) commencing on the date of the execution of this agreement.

II. YEAR TWO THROUGH DURATION OF AGREMENT:

1. Sales Representative shall receive a commission of 10% for all sales made by Sales Representative commencing in year two and thereafter.

THE COMMISSION SCHEDULE (TIME PERIODS AND COMMISSION RATES) SET FORTH ABOVE SHALL APPLY TO RECON AND TRAUMA PRODUCTS.

Each sales period, no later than the 20th day after period close, the Sales Representative will be paid commissions due.

Commission rates for newly introduced or newly added products will be determined at NWOPI's sole discretion. Commission rates stated above are valid for the initial term of this Agreement, but may be revised by NWOPI with respect to any renewal term.

1 | Patricia D. Peterman
PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC
2 | 2817 2nd Avenue North, Suite 300
Billings MT 59101
3 | Phone: 406-252-8500
Fax: 406-294-9500
4 | ATTORNEY FOR PLAINTIFF

5

6

7

8 | MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

9 | BRANDON ROBERTS,                                    Cause No. DV 11-0575

10 |                              Plaintiff,            Judge: RUSSELL C. FAGG

11 | -vs-                                               **SUMMONS**

12 | NORTHWEST Ortho Plus, INC.

13 |                              Defendant.

14 |

15 | STATE OF MONTANA TO THE ABOVE-NAMED DEFENDANT:

16 |     You are hereby summoned to answer the Complaint in this action which is filed in the

17 | office of the Clerk of this Court, a copy of which is herewith served upon you, and to file your

18 | answer and serve a copy thereof upon the Plaintiff's attorney, Patricia D. Peterman, of PATTEN,

19 | PETERMAN, BEKKEDAHL & GREEN, PLLC, 2817 2nd Avenue North, Suite 300, Billings,

20 | Montana 59101, within twenty (20) days after the service of this Summons, exclusive of the day

21 | of service; and in case of your failure to appear or answer, judgment will be taken against you by

22 | default, for the relief demanded in the Complaint.

23 |     WITNESS my hand and the seal of said court this 12th day of April, 2011.

24 |

25 | (COURT SEAL)                              CAROL MUESSIG

26 |                                          CLERK OF DISTRICT COURT

27 |

28 |                              By Connie R. Schramm

                                           Deputy

CLERK OF THE
DISTRICT COURT
CAROL MUESSIG

2011 APR 12 PM 3 31

FILED

BY

DEPUTY

1 Patricia D. Peterman
PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC
2 2817 2nd Avenue North, Suite 300
Billings MT 59101
3 Phone: 406-252-8500
Fax: 406-294-9500
4 ATTORNEY FOR PLAINTIFF

5

6

7

8
MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY
9

10 BRANDON ROBERTS,                                    Cause No.   D V - 1 1 - 0 5 7 5

11                          Plaintiff,                 Judge:
                                                                  RUSSELL C. FAGG
12 -vs-                                                PETITION FOR A TEMPORARY
                                                       RESTRAINING ORDER
13 NORTHWEST ORTHO PLUS, INC.

14                          Defendant.

15      COMES NOW the Plaintiff Brandon Roberts ("Roberts") above named, by and through his

16 attorney, and petitions this Court pursuant to § 27-19-201 and M.C.A.§ 27-19-314 M.C.A. to (i)

17 immediately issue a temporary restraining order, to (ii) order the Defendant, NWOPI ("NWOPI")

18 to show cause, if any it may have, why a preliminary injunction should not be issued, and to (iii)

19 issue a preliminary injunction. In support hereof the Plaintiff states as follows:

20 1.   The Plaintiff is a sales representative in the State of Montana. On April 12, 2011, he filed

21      a Complaint for Declaratory Action seeking a declaratory judgment pursuant to the Montana

22      Uniform Declaratory Judgments Act, §§27-8-101 et seq., MCA, declaring void and

23      unenforceable under Montana law provisions of a Non-Competition clause in an Agreement

24      prepared by NWOPI and terminated by NWOPI In February 2011.  On April 11, 2011,

25      Brandon Roberts also filed for a preliminary injunction because Defendants will interfere

26      with Plaintiff's right to pursue his career and Montana law provides that non-compete clauses

27      are void as against public policy.

28 2.   Defendant purports to: (1) prohibit Plaintiff from engaging in his occupation; (2) dictate that

        Washington law will govern Plaintiff's employment in Montana; and (3) dictate that legal

1    proceedings arising from Plaintiff's employment in Montana will be venued in
2    Washington. NWOPI required him to sign an Agreement with several provisions, including
3    a Non-Compete provision, a copy of which is attached as Exhibit A (the "Agreement").
4    There was no additional consideration given for the provisions.

5    3.   In February 2011, NWOPI terminated The Agreement.

6    4.   Montana has a significantly greater interest in this proceeding because under Montana law,
7         "any contract by which anyone is restrained from exercising a lawful profession, trade, or
8         business of any kind, otherwise than as provided for by 28-2-704 or 28-2-705, is to that
9         extent void." The two exceptions to this law allow parties to agree that upon either the sale
10        of goodwill of a business or the dissolution of a partnership, one or more of the parties will
11        refrain from carrying on a similar business within a narrow designated area. Sections 28-2-
12        704 and -705, MCA. Here, this contract does not deal with the sale of goodwill of a business
13        or the dissolution of a partnership, so neither exceptions apply. Miller v. Madel, 176 Mont.
14        49, 575 P.2d 1321 (1978).

15   5.   In Miller v. Madel, supra, a defendant entered into an employment agreement with plaintiff
16        Miller company, which was a general insurance agency. Defendant Madel was Miller's field
17        agent for purposes of selling credit life insurance. Defendant Madel then terminated his
18        employment with Miller company and began working for a competing insurance company.
19        Plaintiff Miller sued Defendant Madel, asking for an order restraining him from contacting
20        or soliciting any of Miller's customers if he had dealt with them on behalf of Miller in the
21        past. A temporary restraining order was issued; a trial was held; and, the district court
22        resolved the restraining order on the grounds that the restrictive agreement was contrary to
23        the public policy of Montana and 28-2-703.

24   6.   The Madel plaintiffs contended that such restrictive covenants should be enforced if they are
25        reasonable. The Madel court found that they were enforced only when information was
26        confidential and not readily accessible to competitors.

27        Also in Restatement of Agency 2d, § 396, the comment on clause (b) indicates that there is
          no 'trade secret' if the information was not confidential and was readily accessible to others.
28

- 2 -

1   The Madel court relied upon Best Dairy Farms v. Houchen, 152 Mont. 194, 448 P.2d 158

2   (1968) which held that Houchen was not enjoined from soliciting customers of his former

3   employer because the information of customers' names and addresses was not confidential

4   and was readily accessible to anyone. The same was true in Madel. In Madel, defendant

5   Madel did nothing more than contacts banks which were obviously known and open to all

6   vendors of credit life insurance. No privileged information was required by defendant to

7   locate the banks which he solicited. The knowledge of the banks was clearly within the

8   public domain. In fact, to locate banks in Montana would be a much easier task than to

9   produce customer names on a milk route as in Houchen.

10  7.  Here, any potential customer names have become public record are public record and in

11      the Yellow Pages. Further, Plaintiff's potential customers and clients are not privileged

12      and are clearly within the public domain.

13  8.  The Montana Supreme Court has determined that covenants not to compete that extend to

14      a 250 mile radius, as here, are unreasonable as a matter of law.   Mont. Mt. Prods. v. Curl,

15      2005 MT 102 (Mont., 2005). In  Mont. Mt. Prods, the Montana Supreme Court held as

16      follows:

17          The covenant not to compete fails the third prong of the test. That prong, again, is that the
            covenant "must be reasonable, that is, it should afford only a fair protection to the interests
18          of the party in whose favor it is made, and must not be so large in its operation as to interfere
            with the interests of the public." (Citations omitted). We have had little opportunity to
19          examine this prong in the context of an employer-employee relationship. On the two
            occasions where we have held, or at least suggested, that an employment contract's covenant
20          not to compete satisfied the prong, the covenant only restricted the employee's stockholdings
            or profits. (Citations omitted). Here, on the other hand, Curl is outright prohibited from
21          practicing her trade within 250 miles of her former employer.

22      The same is true here. NWOPI is attempting to prevent Brandon Roberts from practicing his

23      profession throughout most of Montana.

24  9.  If Brandon Roberts is prevented from continuing his profession, it will cause great and

25      irreparable harm to Plaintiff in that Plaintiff will be unable to immediately make a living.

26  10.  The Plaintiff Brandon Roberts seeks the immediate issuance of a temporary restraining

27      order preventing and precludingNWOPI from interfering in Plaintiff's profession and

28      business because Montana has a substantially greater interest as a matter of public policy.

- 3 -

1    Plaintiff further seeks a preliminary injunction, following a show cause hearing,
2    enjoiningNWOPI from interfering with his business and permitting Roberts to continue
3    in his profession.

4   11.   A temporary restraining order may be issued, without notice, to the adverse party, if it
5         appears from specific facts set out by this verified Petition, that a delay would cause
6         immediate and irreparable injury to the applicant before the adverse party or its attorney
7         could be heard in opposition and the applicant or the applicant's attorney has certified to
8         the Court, in writing, of the efforts to give notice to the adverse party. § 27-19-315
9         M.C.A. Counsel will provide an affidavit regarding notice to the Defendant's attorney
10        once a time is set for a hearing on the TRO. A preliminary injunction may be granted
11        when it appears that the applicant is entitled to the relief demanded and relief consists in
12        restraining the commission or continuance of the act complained of, or it appears that the
13        actual continuance of some act during the litigation would produce great or irreparable
14        injury to the applicant, when it appears during the course of litigation that the adverse
15        party is doing or threatens to do or is procuring or suffering to be done some act in
16        violation of the applicant's rights respecting the subject to the action pending which will
17        render judgment ineffectual, or when it appears that the adverse party during the pendency
18        of the action threatens or is about to remove or dispose of the adverse party's property
19        with intent to defraud the applicant. §27-19-201 M.C.A.

20  12.   Here the adverse party, Defendant NWOPI, has threatened to prevent Brandon Roberts
21        from working at his profession in Montana in violation of the public policy of Montana.
22        The Defendant will suffer no harm by reason of the restraining order and injunction
23        because it will continue to operate from Spokane, Washington. The Plaintiff, on the other
24        hand, will suffer substantial and/or irreparable harm if the Defendant is not restrained and
25        if Plaintiff is not permitted to develop his business and practice. Further, Plaintiff has a
26        high probability of success on the merits because the covenant not to compete will likely
27        be found as void and unreasonable under Montana law.

28  13.   Plaintiff is therefore entitled to the injunctive relief hereby sought.

- 4 -

1

2      WHEREFORE, the foregoing reasons the Plaintiff respectfully requests this Court as

3  follows:

1  Patricia D. Peterman
   PATTEN, PETERMAN, BEKKEDAHL & GREEN, PLLC
2  2817 2nd Avenue North, Suite 300
   Billings MT  59101
3  Phone: 406-252-8500
   Fax: 406-294-9500
4  ATTORNEY FOR PLAINTIFF

5

6

7

8  MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY

9  BRANDON ROBERTS,                          | Cause No. DV 11-0575

10                           Plaintiff,       | Judge: RUSSELL C. FAGG

11  -vs-                                       | **SUMMONS**

12  NORTHWEST Ortho Plus, INC.                 |

13                           Defendant.        |

14                                             |

15  STATE OF MONTANA TO THE ABOVE-NAMED DEFENDANT:

16       You are hereby summoned to answer the Complaint in this action which is filed in the

17  office of the Clerk of this Court, a copy of which is herewith served upon you, and to file your

18  answer and serve a copy thereof upon the Plaintiff's attorney, Patricia D. Peterman, of PATTEN,

19  PETERMAN, BEKKEDAHL & GREEN, PLLC, 2817 2nd Avenue North, Suite 300, Billings,

20  Montana 59101, within twenty (20) days after the service of this Summons, exclusive of the day

21  of service; and in case of your failure to appear or answer, judgment will be taken against you by

22  default, for the relief demanded in the Complaint.

23       WITNESS my hand and the seal of said court this $\underline{12}$th day of April, 2011.

24

25  (COURT SEAL)                          CAROL MUESSIG

CLERK OF THE
DISTRICT COURT
CAROL MUESSIG

2011 APR 12  PM  4 03

FILED

BY _____
DEPUTY

**MONTANA THIRTEENTH JUDICIAL DISTRICT COURT, YELLOWSTONE COUNTY**

BRANDON ROBERTS,

Plaintiff,

-vs-

NORTHWEST ORTHO PLUS, INC.

Defendant.

Cause No.  LN  11- 575

Judge:     RUSSELL C. FAGG

**TEMPORARY RESTRAINING
ORDER AND ORDER TO SHOW
CAUSE**

Upon due consideration of the Petition of Plaintiff, Brandon Roberts, for a Temporary Restraining Order and an Order to Show Cause, and this Court finding that the Plaintiff has demonstrated that the Defendant has threatened to deny Plaintiff the opportunity to pursue his career and that in order to avoid irreparable injury to the Plaintiff's ability to work and in order to maintain the status quo pending the show cause hearing hereinafter scheduled, it is hereby

ORDERED that the Defendant, Northwest Ortho Plus, Inc., its officers, employees, and agents be and hereby are restrained and enjoined from an interfering in Plaintiff's business in Montana; it is

FURTHER ORDERED that no bond shall be required of the Plaintiff pending the show cause hearing hereinafter scheduled; it is

1

1    FURTHER ORDERED that the Defendant, Northwest Ortho Plus, Inc. appear before this

2   Court in Courtroom No. _509_ of the Yellowstone County Courthouse, Billings, Montana, on the

3   _22nd_ day of April, 2011, at the hour of _1:15_ o'clock _P_.m., and then and there to show cause, if

4   any it may have, why a preliminary injunction enjoining and prohibiting Defendant from interfering

5   in Plaintiff's employment in Billings, Yellowstone County, Montana

6        SO ORDERED this _12_ day of April, 2011.

7

8

9                                    _____
                                     DISTRICT COURT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21        State of Montana      } ss CERTIFICATE
          County of Yellowstone }

22           I hereby certify that this sheet and all attached
          sheets identified by impression of my Official Seal

23        are each and all true and correct copies of originals
          filed in my Office in Case No _DV11 - 515_

24           WITNESS  my  hand  and  Official Seal this
          _12_ day of _April_  20_11_

25              Carol Muessig
              Clerk of the District Court

          2 By _____
                              Deputy